UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MISAEL BAEZ,

    Plaintiff,

v.                                                      No: 8:21-cv-24-WFJ-AEP

B&B OF FOWLER, INC.,

    Defendant.

_____/

## ORDER

This matter comes before the Court on Plaintiff Misael Baez's Motion for Entry of Default Final Judgment against Defendant B&B of Fowler, Inc. Dkt. 21. Baez accuses B&B of violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Florida's Workers' Compensation Act ("FWCA"), Fla. Stat. § 440.205. B&B did not file a reply to Baez's motion. For the reasons explained below, the Court grants the motion.

## BACKGROUND

Plaintiff Baez began working for B&B as a mechanic in July 2018, earning $13 an hour as his base wage. Dkt. 7 at 3; Dkt 21, Ex. A at 2. Although Baez worked at least ten hours of overtime every week during his employment there,

B&B never paid him overtime wages. Dkt. 21, Ex. A at 2. B&B instead paid Baez his regular hourly rate for these overtime hours. *Id.*

On or about January 8, 2020, Baez was injured while at work when a tool fell and hit a box cutter, which then went into the air and cut Baez's eye. Dkt. 7 at 3. Baez's supervisor was present during the accident. *Id.* Baez notified B&B about the accident the same day it occurred. *Id.* He attempted to file a workers' compensation claim. *Id.* at 4.

Baez went to the hospital soon after to receive surgery on his eye. *Id.* at 3. While Baez was still in the hospital, Baez learned that B&B was firing him. *Id.* Baez claims this was done in retaliation for his attempt to claim workers' compensation for the accident. *Id.* at 4. Baez says the termination caused him "emotional distress, anxiety, humiliation, shame, embarrassment, and mental suffering." Dkt. 21, Ex. A at 3. It took Baez three months to recover from the surgery, during which he was physically incapable of working. *Id.* He remains unemployed to this day. *Id.*

Baez initiated this lawsuit on January 5, 2021, and then filed a Corrected Complaint on January 19, 2021. Dkts. 1, 7. Defendant B&B was served with a summons and a copy of the Corrected Complaint through its registered agent, Adam Bowman. Dkts. 11, 12. B&B failed to respond to the Corrected Complaint and has not yet participated in the case. Baez moved for clerk's default against

B&B on March 3, 2021, which the clerk entered on March 16, 2021. Dkts. 14, 16, 17, 18. After B&B failed yet again to participate in the case, Baez moved for default judgment on May 3, 2021. Dkt. 21.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default. *See* Fed. R. Civ. P. 55(a). Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person. *See* Fed. R. Civ. P. 55(b)(2). "The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (cleaned up).

When determining whether to grant default judgment, the court must determine whether there is a sufficient basis in the pleadings for the judgment entered. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). The showing required in this context "is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim." *Graveling v.*

3

*Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (cleaned up). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount. *See PetMed Express, Inc. v. MedPets.com, Inc*., 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). Damages may be awarded only if the record adequately reflects the basis for the award. *See Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985). This can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested. *Id.* An evidentiary hearing on the appropriate amount of damages is not required by Rule 55, and it is within the Court's discretion to choose whether such a hearing should take place. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005); *Tara Prods., Inc. v. Hollywood Gadgets, Inc*., 449 F. App'x 908, 911–12 (11th Cir. 2011).

With this guidance in mind, the Court will address both liability and damages in turn below.

## DISCUSSION

### I. Plaintiff Baez Has Adequately Pled His Claims.

#### A. The FLSA Overtime Claim

The FLSA requires that employers pay their employees at least one and a half times the "regular rate" for any work in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1). When a covered employee is not paid the overtime wage, the FLSA provides a private cause of action against the employer for unpaid wages. *See* 29 U.S.C. § 216(b); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). To state a claim for failure to pay minimum wage under the FLSA, a plaintiff must demonstrate that: (1) he is employed by the defendant; (2) the defendant engaged in interstate commerce; and (3) the defendant failed to pay minimum wages. *Freeman v. Key Largo Volunteer Fire & Rescue Dep't., Inc.*, 494 F. App'x 940, 942 (11th Cir. 2012).

Plaintiff Baez has satisfied the first prong. The FLSA defines an employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and it defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). Here, Plaintiff alleges Defendant B&B employed him as a mechanic from July 1, 2018, to January 8, 2020. This is enough to demonstrate the required employee-employer relationship. *See Cabreja v. SC Maint., Inc.*, No. 8:19-cv-296-T-33CPT, 2019 WL 2931469, at

*4 (M.D. Fla. June 19, 2019) (holding that a similar allegation was sufficient to satisfy this prong for a final default judgment).

Baez also satisfies the second prong. A plaintiff employee must establish one of two types of coverage under the FLSA: (1) "enterprise coverage," which applies to the defendant employer; or (2) "individual coverage," which applies to the plaintiff employee. *Id.*; *see also Martinez v. Palace*, 414 F. App'x 243, 244–45 (11th Cir. 2011).[1] An employer falls within the FLSA's enterprise coverage if it meets two requirements: (1) it has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; *and* (2) it has an annual gross volume of sales in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A). Here, B&B employed mechanics who worked on cars—products that have undoubtedly been produced through and moved within interstate commerce. Plaintiff has also alleged B&B has an annual gross volume of sales in excess of $500,000. Dkt. 7 at 2. This is sufficient for this stage of litigation. *See Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) ("Plainly, [plaintiff] need not know for certain, nor prove, that [defendant] has annual gross revenues exceeding $500,000

---

[1] Plaintiff Baez pleads both enterprise and individual coverage. The Court need only address one.

at the pleading stage, especially since that information is likely in [d]efendants' hands, not his.").

Finally, the third prong is also satisfied. Once a plaintiff has established that an employment relationship and coverage exist, the remaining elements "to state a claim of a FLSA violation are quite straightforward." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008).[2] An FLSA overtime plaintiff must plead sufficient facts, plausible on their face, to demonstrate he worked more than forty hours in at least one workweek and the defendant failed to pay the requisite premium for those overtime hours. *Cabreja*, 2019 WL 2931469, at *4. Here, Baez claims he worked more than 40 hours a week and Defendant B&B willfully failed to compensate him at the statutory rate of time and one-half. Dkt. 7 at 5. This is enough. Because Plaintiff has satisfied all three elements of his FLSA overtime claim, the Court enters judgment in his favor on this claim.

**B. The FWCA Claim**

Baez also brings a claim under Fla. Stat. § 440.205 for B&B allegedly terminating him in retaliation for his attempt to file a claim for workers' compensation. Dkt. 7 at 4.

---

[2] Although *Labbe* is a non-binding opinion decided before *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court finds as instructive its teachings on the "straightforward" pleading requirements for FLSA claims.

Section 440.205 states: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." To state a claim under § 440.205, an employee must establish (1) the employee engaged in protected activity, (2) the employee was subjected to an adverse employment action, and (3) a causal relationship existed between the protected activity and the adverse employment action. *Koren v. Sch. Bd. of Miami-Dade Cnty.*, 97 So. 3d 215, 219 (Fla. 2012).

Under the first prong, an employee can still establish a claim even if he did not file a formal claim for workers' compensation before termination of employment. *Salus v. Island Hosp. Fla. Mgmt., Inc.*, 289 So.3d 926, 929–30 (Fla. 4th DCA 2020). Instead, the employee need only take steps to begin the process of seeking benefits under the statute, such as notifying the employer about the injury and discussing treatment with the employer. *Id.* As for the third prong, the employee need not establish that his workers' compensation claim was the only reason for the discharge. *Juback v. Michaels Stores, Inc.*, 143 F. Supp. 3d 1195, 1203 (M.D. Fla. 2015) (citing *Hornfischer v. Manatee Cnty. Sheriff's Off.*, 136 So. 3d 703, 706 (Fla. 2d DCA 2014)). Nor must the employee prove a specific retaliatory intent on the part of the defendant. *Id.*

Here, Baez took steps to claim compensation—and therefore engaged in protected activity—by notifying his employer of the injury, discussing with his employer the treatment needed for the injury, and later attempting to file a formal workers' compensation claim. Baez suffered adverse employment action when he was terminated from his job. And Baez demonstrates a sufficient causal link. A plaintiff need only show that the "protected activity and the adverse action were not wholly unrelated." *Koren*, 97 So.3d at 219 (quoting *Gibbons v. State Pub. Emps. Relations Comm'n*, 702 So.2d 536, 537 (Fla. 2d DCA 1997)). Here, B&B fired Baez less than twenty-four hours after his accident, when he was still in the hospital being treated for his injury. This close temporal proximity satisfies the causation requirement. *See Jackson v. Agency for Persons with Disabilities Fla.*, 608 F. App'x 740, 743 (11th Cir. 2015) (stating that plaintiffs can establish a causal relationship by showing "close temporal proximity" between the statutorily protected activity and the adverse employment action).

Where, as here, "a plaintiff establishes a prima facie case by proving the protected activity and the negative employment action are not completely unrelated, the burden then shifts to the employer to proffer a legitimate reason for the adverse employment action." *Ortega v. Eng'g Sys. Tech., Inc.*, 30 So. 3d 525, 529 (Fla. 3d DCA 2010). By failing to answer the complaint or otherwise engage in the case, Defendant B&B admits it had no legitimate reason to terminate

9

Plaintiff Baez. The Court therefore grants judgment in favor of Plaintiff on this claim.

**II. Damages**

The Court must now determine whether damages are appropriate and, if so, how much should be awarded. Plaintiff seeks an entry of final default judgment against B&B for: (1) $5,785 in unpaid overtime wages; (2) $5,785 in liquidated damages on the overtime claim; and (3) $30,000 for back pay and emotional distress damages collectively. Dkt. 21, Ex. A at 3. For the reasons explained below, the Court will award damages to Baez, but not in the amounts he seeks.

**A. Overtime Damages**

As stated before, Baez is entitled to be compensated for one and one-half times the regular rate for all hours worked in excess of forty hours per work week. It is well established that "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Etienne v. Inter-County Sec. Corp.*, 173 F.3d 1372, 1375 (11th Cir. 1999) (cleaned up). Here, Defendant B&B has not answered the Corrected Complaint nor offered any employment records. Therefore, Plaintiff's affidavit is

sufficient evidence to show the amount and extent of the work he performed. *See Caterson v. Travel Res. Vacation Club, Inc.*, No. 19-62803-CIV-Williams/Valle, 2021 WL 1165896, at *4 (S.D. Fla. Jan. 13, 2021) ("Affidavits based on personal knowledge can be sufficient to establish damages . . . Indeed, in the context of an FLSA default judgment, affidavits may be the only means of establishing a plaintiff's damages because the defendant employer has not come forward with time records or other evidence of its own.") (cleaned up).

Plaintiff seeks compensation for the 10 hours of overtime he worked each week while at B&B. Plaintiff says he worked there from July 1, 2018, to January 8, 2020. Dkt. 7 at 3. In his calculations, he says this duration amounts to 89 weeks. Dkt. 21, Ex. A at 3. However, there are actually 79 weeks in this period. The damages awarded to Plaintiff will be lowered accordingly.

Because Plaintiff earned $13 an hour as his base wage, he should have earned an additional $6.50 for each hour of overtime work (making his total overtime wage $19.50 per hour). Plaintiff says he worked ten hours of overtime each week during his 79-week employment with Defendant. This entitles Plaintiff to overtime damages totaling $5,135 ($6.50 for each hour of overtime work x 10 hours of overtime work each work x 79 weeks = $5,135). The Court therefore grants Plaintiff $5,135 in overtime damages.

### B. Liquidated Damages on the Overtime Claim

The next question is whether Plaintiff Baez is entitled to liquidated damages. Plaintiff alleges in the Corrected Complaint that Defendant willfully violated the FLSA. Dkt. 7 at 3. By failing to answer the complaint, Defendant admits that it acted willfully in failing to pay Plaintiff the statutorily required overtime wage for hours worked. When, as here, a defendant has not presented a defense that the failure to pay the wage was in good faith, the court must also require the employer to pay liquidated damages in an additional amount equal to the amount of unpaid overtime compensation. 29 U.S.C. § 216(b). Accordingly, Defendant is liable to pay Plaintiff liquidated damages in the amount equal to the overtime wages owed: $5,135.

### C. Back-Pay Damages

Plaintiff Baez also seeks an award of back pay pursuant to Defendant B&B's violation of Fla. Stat. § 440.205. He estimates his "back pay damages and emotional damages to be $30,000." Dkt. 21, Ex. A at 3. However, he does not clarify how much of this figure represents back pay, how much of this figure relates to emotional distress, or if he is seeking liquidated damages for this claim.

Employers who violated § 440.205 may be required to pay plaintiff-employees economic damages, including back-pay wages. *Reyes v. TruGreen Ltd. P'ship*, No. 06-21504-CIV-Jordan, 2007 WL 9701125, at *8 (S.D. Fla. June 28,

2007). Back pay includes any amounts the employee would have earned between the wrongful discharge and the date of trial, less any amounts earned between the wrongful discharge and the trial. *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So.3d 904, 914 (Fla. 4th DCA 2013).

Importantly, to be entitled to an award of back pay under Florida law, the employee must have been ready, willing, and able to accept employment. *See Miller v. Marsh*, 766 F.2d 490, 492 (11th Cir. 1985); *Caterpillar Logistics Servs., Inc. v. Amaya*, 201 So. 3d 173, 176 (Fla. 3d DCA 2016). Periods of unavailability are generally excluded from computations of back pay, including periods during which the employee was unable to work because of injuries. *See Aery*, 118 So.3d at 915; *see also Bender v. Salvation Army*, 830 F. Supp. 1454, 1456 (M.D. Fla. 1993).

Here, Plaintiff Baez says he was physically unable to work for three months following his eye surgery. Dkt. 21, Ex. A at 3. Baez was therefore not ready, willing, and able to accept employment while he recovered from surgery, and, as such, he is not entitled to an award of back pay for this period under Florida law.

Nor will this Court award Baez back-pay damages for the period of unemployment after he recovered from surgery. A wrongfully terminated employee has a duty to mitigate damages through reasonably diligent efforts to seek employment that is substantially equivalent to the position from which he was terminated. *See Moreland v. Suntrust Bank*, 981 F. Supp. 2d 1210, 1212–13 (M.D.

Fla. 2013); *see also Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999). Although a plaintiff is not required to be successful in mitigating his damages, he must make a reasonable, good faith effort to mitigate. *Hudson v. Chertoff*, 473 F. Supp. 2d 1292, 1297 (S.D. Fla. 2007). If the plaintiff does not return to work for reasons unrelated to the employer's actions, lost wages may not be awarded. *See Caterpillar*, 201 So.3d at 176; *see also Burrows v. State Farm Mut. Auto. Ins. Co.*, No: 8:17-cv-212-T-27AEP, 2017 WL 3316131, at *2 (M.D. Fla. Aug. 3, 2017).

Here, Baez remains unemployed to this day. He has not provided this Court any documentation showing he made a reasonable, good-faith effort to seek employment elsewhere. In fact, beyond the conclusory statement that he has "had difficulty finding another job," *see* Dkt. 21, Ex. A at 3, there is no indication that Baez has applied for a single job since his termination almost a year and a half ago. Because Baez has failed to mitigate his damages after he recovered from surgery, the Court will not award back-pay wages for this period.

### D. Emotional Distress Damages

As stated above, Plaintiff collectively seeks $30,000 for "back pay damages and emotional damages." Dkt. 21, Ex. A at 3. An employer who violates Fla. Stat. § 440.205 has committed an intentional tort, thereby exposing itself to liability for

14

damages for emotional distress. *Scott v. Otis Elevator Co.*, 572 So.2d 902, 903 (Fla. 1990).

Plaintiff alleges his termination caused him "emotional distress, anxiety, humiliation, shame, embarrassment, and mental suffering." Dkt. 21, Ex. A at 3. He says the termination caused him to worry about finding a new job and paying his bills. *Id.* By defaulting, Defendant B&B admits that Plaintiff suffered emotional distress as a result of his termination.

Considering Baez does not allege his emotional distress has caused him to experience any physical ailments, the Court believes $4,000 is a fair and reasonable amount of damages for this claim.

### III. Attorney's Fees and Costs

The FLSA provides for the award of reasonable attorney's fees and costs to a prevailing Plaintiff.[3] 29 U.S.C. § 216(b). This includes parties who prevail on default judgment against a defendant employer. *Simon v. Leaderscape LLC*, 565 F. Supp. 2d 1332, 1334 (S.D. Fla. 2008). Accordingly, as the prevailing party, Plaintiff Baez is entitled to recover reasonable attorney's fees and costs in this case.

---

[3] Plaintiff does not request attorney's fees pursuant to Fla. Stat. § 440.205, nor are they available. *See Faison v. Edwards*, No. 8:10–cv–1711–T–30MAP, 2011 WL 32435, at *3 (M.D. Fla. Jan. 5, 2011) (holding that § 440.205 does not contain a provision requiring reimbursement for attorney's fees).

To determine the amount of attorney fees, a court must first ascertain the hourly rate for the attorney's representation. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experiences, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The burden lies with the applicant to establish that the requested rate is in line with the prevailing market rates. *Id.*

Second, the court must determine the reasonable hours expended by counsel. *Duckworth*, 97 F.3d at 1397. The attorney should exercise proper "billing judgment" and exclude those hours that would be unreasonable to bill a client or opposing counsel. *Id.* (citing *Norman*, 836 F.2d at 1301). A court should deduct excessive, unnecessary, and redundant hours spent on unsuccessful claims. *Id.* (citing *Norman*, 836 F.2d at 1301–02). The district court has discretion in determining the amount of attorney's fees to be awarded. *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001).

Here, Plaintiff Baez requests $5,600 in attorney's fees. Dkt. 21 at 13–14. Baez's counsel worked 14 hours on this case at a rate of $400 per hour. Dkt. 21, Ex. B. The Court finds that this is a reasonable rate for an attorney who, like Mr. Hill, has served as co-counsel or lead counsel in 345 federal cases. Dkt. 21, Ex. B;

*see also Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1328–29 (S.D. Fla. 2015) (holding that attorney's rate of $400/hour was reasonable in FLSA case). Moreover, the Court finds that the 14 hours worked on this case is a reasonable duration for this type of cause of action and a case that has defaulted. *Id.* at 1329. The Court therefore awards Plaintiff the requested $5,600 in attorney's fees.

Finally, Baez also seeks $400 in costs to cover the filing fee for this action. Under Rule 54, a prevailing party is entitled to an award of costs unless the court directs otherwise. Fed. R. Civ. P. 54(d); *see also* 29 U.S.C. § 216(b) (provision of FLSA providing that the court in an action seeking unpaid overtime compensation shall allow a reasonable attorney's fee to be paid by the defendant as well as the costs of the action). The Court therefore grants an award of $400 in costs to Baez. *See Caraballo v. Double L Enter., LLC*, No. 8:15-cv-2123-T-27AEP, 2016 WL 1084809, at *5 (M.D. Fla. Feb. 25, 2016) (awarding $400 filing fee costs in FLSA action).

## CONCLUSION

Plaintiff's Motion, Dkt. 21, is **GRANTED**. The Clerk shall enter a default judgment in favor of Plaintiff Baez and against Defendant B&B in the amount of $20,270, which includes $5,135 in unpaid overtime compensation; $5,135 in liquidated damages; $4,000 in emotional distress damages; $5,600 in attorney's fees; and $400 in costs.

**DONE AND ORDERED** at Tampa, Florida, on May 10, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record